GREEFF et al. v. MILLER. FLEITMAN et al. v. SAME. SCHWIETER-ING et al. v. SAME. DIECKERHOOF et al. v. SAME.

(Circuit Court, S. D. New York. May 2, 1898.)

Nos. 3,500, 3,573, 3,503, 3,666.

1. ATTORNEYS—COMPENSATION—AMOUNT—EXPERT TESTIMONY.

Where it is the custom for attorneys to take cases on a contingent basis, paying expenses themselves, and to add a percentage to their normal charges to cover the consequent risk of loss, the court, in determining the amount which it will allow as attorney's fees in a particular case, should consider. expert testimony in the light of the fact that no such risk exists under the circumstances.

2. SAME—TEST CASES—APPORTIONMENT.

Where there are a number of cases, all presenting practically the same questions of law and fact, and certain ones are selected for trial as test cases, the amount allowed by the court to attorneys, for disbursements and professional services in the preparation and trial of such test cases, should be charged pro rata against the whole number of cases, since all are benefited equally by such services.

These causes were heard on exceptions to the referee's report as to the amount due the attorneys and counsel on the basis of a quantum meruit for professional services rendered.

Benjamin Barker, Jr., for the motion.

Wm. B. Coughtry, opposed.

LACOMBE, Circuit Judge. The successive attorneys and counsel having asked for no distribution, as between themselves, of the amount proper to be paid upon order of substitution, the question presented for consideration is much simplified. It will be disposed of as if there had been but a single attorney and a single counsel engaged for the plaintiffs during the progress of the litigation.

The referee finds that a payment of $50 in each case would be full compensation to the attorneys for the professional services rendered in each of these cases. In this opinion I entirely concur. There is, it is true, a disbursement of $63 paid for chemical analysis which might properly be included among the attorneys' charges; but, inasmuch as the expense therefor was undoubtedly incurred in preparing one of the typical cases for trial, this item may be considered with the allowance for services of counsel to be hereafter discussed.

The referee confined himself not only to services rendered in these cases, but to services rendered as attorney only. For that reason his report does not go far enough. It is unnecessary, however, to

87 F.—3

send the case back to him, since this court is fully advised as to all the facts.

It appears that there was a group of some 40 or 50 cases (including the 4 above entitled), all involving the same questions of law and practically the same questions of fact. They were all in charge of the same attorney and counsel. From time to time a case supposed to be typical, and to present in a favorable light the propositions which plaintiffs sought to maintain, was selected for trial. This was undoubtedly the proper way in which to deal with a volume of litigation such as is presented by this group of cases. Success or failure in the test cases, of course, affected the cases not tried, and to that extent the professional work resulting in such success or failure may be considered as proportionately rendered in each case of the group. Two cases, which seem to have involved but few entries, were successively tried at circuit, the plaintiff defeated in both, and appeal never prosecuted. A third suit, known as the "Butterfield Case," was tried at circuit. Plaintiff prevailed, appeal was taken to the supreme court of the United States, and judgment affirmed. By this affirmance several of the questions arising in the case were finally disposed of favorably to the plaintiff, and by the result of such decision the plaintiffs in each of the four above-entitled actions have directly benefited. A fourth case was tried before me in October, 1888, involving some 15 or 16 entries, a verdict being rendered for the defendant. A writ of error was sued out to review this decision, but subsequently abandoned. Some effort has subsequently been made to get another test case ready for trial, but none has been tried. The question now presented is, what were the services which resulted as above indicated worth?

I am familiar with the questions raised in the case tried before me. It did not take a long time, and while the facts were fresh in my mind I certified a charge in favor of the United States attorney for his services for the government on the trial of the case of $250. In the absence of any specific proof of some extraordinary expenditure to obtain evidence, I should consider $500 a fair allowance for the services of counsel upon the trial, and for the services of attorney and counsel in preparing the case for trial. The allowance of $250 for preparation for trial seems large, but it appears that part of the testimony was taken by deposition, which is always expensive. The same amount may fairly be allowed for the trial of the Butterfield Case, and for the two small actions first tried $350 each should be sufficient. This would aggregate $1,700. For all services in prosecuting writs of error and arguing the case in the supreme court of the United States $1,500 would seem to be a fair remuneration. This brings the aggregate up to $3,200. For all other services of counsel, including the preparation of additional cases for trial, $1,000 would seem to be a liberal award. This makes the aggregate $4,200, and when it is considered that this sum is separate from and additional to the allowance for attorneys' services of the kind passed upon by the referee, and by him found to be worth $50 per suit, it is thought that the conclusion

reached by this court is not so far away from the estimates testified to by the expert witnesses as might at first be supposed. Moreover, it must be borne in mind that all of these witnesses testify from the point of view of the practitioner in customs cases, who almost invariably finds it necessary to add a percentage to his normal charge in order to cover contingencies, since most of that business is placed in the hands of attorneys with the understanding that they are to receive nothing, and themselves bear the current expenses, unless they succeed eventually in recovering from the government. This estimate of $4,200, however, is made with no such contingency in view, since whatever proportion of it may be properly chargeable to the plaintiffs in these suits is going to be paid by them, and thus no contingency of loss exists.

This $4,200, having been paid for services by which all interested benefited equally, should be distributed proportionately against the several cases. Thus, if the amount sued for in one of the cases entitled above be $6,000, and the total amount sued for in all of the cases of the group amounted to $120,000, one-twentieth of the $4,-200 should be charged against this suit.

It appears, however, that there was a recovery in the Butterfield Case which was affirmed by the supreme court, and it must be assumed that the amount of such judgment was paid by the government. Under the original agreement with the several plaintiffs, 50 per cent. of this must have been received and retained by the attorney. That sum should therefore be deducted from the $4,200, and the balance only distributed as a charge proportionately against the different actions. Inasmuch as all the figures required to reach the result are matters of record, it would seem as if a conclusion might be reached without any further reference to the master.